## W. A. TURNER v. THE STATE.

*No. 317.   Decided February 28.*

1. **Murder—Charge—Self-Defense.**—On a trial for murder, it is not error for the court, in the charge, to refuse to submit the issue of self-defense where such issue is not raised by the evidence.

2. **Same—Recalling Witness to Lay Predicate to Impeach—Collateral Matter.**—A witness may be recalled by the opposite party in order to lay a predicate for his impeachment, but if either the question or answer be as to immaterial matter they may be excluded.   Following Drake v. The State, 29 Texas Crim. App., 265.

3. **Bill of Exceptions.**—A bill of exceptions reserved for exclusion of evidence must show that the rejected evidence was in some manner material to some issue in the case

4. **Evidence—Animus of Defendant.**—On a trial for murder, it was competent, as tending to show the animus of the parties, for the State to introduce in evidence a petition for injunction filed by deceased against defendant and others in regard to some cattle, the order of the judge granting the writ, and the writ.

5. **Same—Acts of a Third Party.**—On a trial for murder, defendant proposed to prove that the brother of deceased was "on the ground" after the killing, armed with a pistol, which evidence was by the court refused.   *Held,* the fact that the brother had a pistol after the killing did not tend in any manner to excuse or justify defendant in having previously shot deceased, and consequently no error is shown.

APPEAL from the District Court of Polk.   Tried below before Hon. L. B. HIGHTOWER.

Appellant was indicted for the murder of one N. R. Hickman, and on his trial was convicted of murder of the second degree, with punishment assessed at five years' imprisonment in the penitentiary.

The killing occurred in the town of Leggett, in Polk County, Texas, on the afternoon of the 24th day of September, 1892.   The immediate cause of the difficulty was that the deceased had charged one Nick Vinson with having branded one of his calves, which Vinson denied, and called him a God-damned liar.   Deceased told him he was another damned liar, and patted Vinson, who was sitting on his mule, on his thigh, and told him he could whip him on any part of the ground.   Vinson told him he would fight him a fair fight, and got off his mule and struck at Hickman (the deceased) and missed him, and Hickman knocked him down, and as Hickman was bending over him in the act of striking him again, the defendant, W. A. Turner, who was a friend of Vinson, stepped out of the rear door of Wheeler's saloon, behind which the fight was going on, with a pistol in his hand, and, raising and holding it with both hands, fired it at some eighteen feet distant from the parties, and shot Hickman (the deceased) in the head, which shot killed him, he dying from the effect of it a few minutes afterwards.   Turner's pistol was fired a second time, immediately after the first shot.   Cannon, a State's witness, and a brother-in-law of the deceased, testified, that he was the party at whom this second shot was

fired.    Defendant testified, that the second shot was accidental; that a man by the name of Barrington threw a stick at him which struck him on the arm just after the first shot was fired, which caused the pistol to be discharged.    And Barrington testified to throwing the stick at him just after he fired the first shot.    It was in proof that Hickman was a larger man than Vinson, and that Vinson had been drinking, and was perhaps drunk when the fight began.    It was also in proof that Hickman (deceased) was unarmed.    When the parties commenced fighting, some one attempted or proposed to separate them, and Cannon, who was a brother-in-law of Hickman (the deceased), cried out, "Let them fight."    The defendant, in testifying for himself, stated in substance, that hearing this exclamation of Cannon, "Let them fight," he went out of the back door of the saloon; saw Vinson upon the ground and Hickman stooping over him, with his left hand in or toward his shirt collar; his right arm drawn back with fist doubled, and in the act of striking again.    That at the same time he saw Cannon, the brother-in-law of Hickman, close by, going towards the parties with a knife in his hand.    That he shot Hickman because he thought they were going to kill Vinson.

On the trial, over objection of defendant, the State was allowed to introduce in evidence, for the purpose of showing the feeling and intent of the parties towards each other, a writ of injunction, which a short time before had been sued out by deceased against the defendant and Vinson and one Bartley Cummings, Mrs. Barsheba Hickman, and others.

As explanatory of the rulings of the court in regard to this matter, the following is a concise summary of the facts pertaining thereto:

The deceased, N. R. Hickman, was a nephew of Bartley Hickman, the husband of Barsheba Hickman, and he had lived with and was partly raised by these two old people, who were childless.    Bartley Cummings was a nephew of Mrs. Barsheba Hickman, and had married an adopted daughter of the old people and lived with them.    Bartley Hickman and his wife Barsheba made a joint will, leaving all their property to the deceased and Bartley Cummings, making deceased an independent executor of the will, and shortly thereafter Bartley Hickman died.    Deceased took possession of the estate, having proved up the will.    Afterwards Mrs. Barsheba Hickman made a deed of gift, which she endorsed upon the will, transferring all of her interest in the estate, except a life-estate, to the two nephews, the deceased, and Bartley Cummings.    The petition for injunction alleged, that sometime after the execution of the deed of gift, Bartley Cummings, the defendant Turner, Vinson and others had prevailed upon and induced Barsheba Hickman to repudiate her deed of gift, and that they had gathered and sold a number of cattle, and were about gathering a number

of other cattle belonging to the estate, to sell. All of which was done for the purpose of defrauding the deceased of his interest in the estate.

The petition not only prayed for injunction, but for actual and exemplary damages amounting to several thousand dollars, on final hearing.

All the other questions presented by the bills of exception are sufficiently stated in the opinion.

The court refused a special requested instruction, as follows:

"If you believe from the evidence that the defendant, W. A. Turner, saw a difficulty and fight between the deceased, N. R. Hickman, and Nick Vinson; and that the fight and conflict was such as to create, and did in fact create, in the mind of the defendant the reasonable belief, from his standpoint at the time and under the circumstances, that Nick Vinson was then and there in danger of death or serious bodily injury at the hands of the deceased, N. R. Hickman, and that for the purpose of defending Nick Vinson against such danger, real or apparent, defendant shot and killed the deceased, N. R. Hickman, such act was not a violation of law, and you will, if you so find the facts to have been, find the defendant not guilty."

*J. P. Stevenson, B. F. Bean,* and *Houlhousen & Feagan,* for appellant.— 1. The court erred in failing and refusing to give special charge number 1, asked by defendant. Homicide is justifiable and subject to no punishment when committed in self-defense or in defense of any third person, when the nature of the attack, the character of the crowd, and all the facts and circumstances surrounding the defendant produced in his mind a reasonable fear or apprehension of death or of some serious bodily injury to such third person from the attack; and while in this state of mind, if he kills the assailant of said third party while making such attack in order to protect said assaulted third party, then he is not guilty. Guffee v. The State, 8 Texas Crim. App., 187; Foster v. The State, 8 Texas Crim. App., 248; Kemp v. The State, 11 Texas Crim. App., 174; North v. The State, 12 Texas Crim. App., 111; Snell v. The State, 29 Texas Crim. App., 236; West v. The State, 18 Texas Crim. App., 640; Smith v. The State, 15 Texas Crim. App., 139; Burkhard v. The State, 18 Texas Crim. App., 599; McConnell v. The State, 22 Texas Crim. App., 354; Liskosski v. The State, 23 Texas Crim. App., 165.

2. The court erred in not permitting the witness J. I. Cannon, when recalled, to answer the following question propounded to him by the defendant: "Did you not state on the examining trial of this defendant in the town of Leggett, in Polk County, Texas, about two days after N. R. Hickman was killed, that you had been in Leggett and away from the gin, your place of business, about one hour and twenty minutes, when Hickman was killed?" Because defendant expected said wit-

ness to answer said question in the affirmative, and to state that he had been in the town of Leggett, and away from his business, one hour and twenty minutes before the killing; which testimony would go to show, in connection with other testimony adduced on the trial of said cause, that said witness was there present for a considerable length of time before the killing, to aid and encourage his brother-in-law, the deceased, in his attack upon Nick Vinson; and in the event he denied having so stated on the examining trial, then said evidence was admissible for the purpose of laying the predicate to impeach said witness. Harvey v. The State, 37 Texas, 365; Treadway v. The State, 1 Texas Crim. App., 668; Grosse v. The State, 11 Texas Crim. App., 364; Bennett v. The State, 28 Texas Crim. App., 539; Garza v. The State, 3 Texas Crim. App., 286.

The court erred in permitting the State to introduce in evidence and read in the presence of the jury, over the objection of the defendant, the petition, the order of the judge in granting the injunction, and the writ of injunction and indorsement thereon in cause number 2066, pending in the District Court of Polk County, Texas, wherein N. R. Hickman was plaintiff and W. A. Turner and others were defendants.

We submit that the admission of the records in causes, other than the one on trial, in trials for homicide, as a rule are limited to the records of criminal cases, and that proof of a distinct crime, as a general rule, will not be admitted unless taken in connection with other facts in the case. The evidence tends to establish a reason for and the motive which actuated the hostility of defendant towards the deceased, and is an appropriate matter to be considered and weighed by the jury in connection with the other testimony in determining the question of motive or intent. We submit that this record throws no light on the case at bar. Dill v. The State, 1 Texas Crim. App., 278; Rucker v. The State, 7 Texas Crim. App., 560; Coward v. The State, 6 Texas Crim. App., 59; Somerville v. The State, 6 Texas Crim. App., 433; McKinney v. The State, 8 Texas Crim. App., 639; Powell v. The State, 13 Texas Crim. App., 244; Partain v. The State, 22 Texas Crim. App., 100; Taylor v. The State, 14 Texas Crim. App., 340; Dubose v. The State, 13 Texas Crim. App., 418; Smith v. The State, 15 Texas Crim. App., 347; Pinckord v. The State, 13 Texas Crim. App., 468.

*Chilton & McIlwaine,* also for appellant.—We submit that this case should be reversed, because the court failed to charge on justifiable homicide in any way, and because the charge on manslaughter was too formal, restrictive, and incomplete to fairly present the question of the degree of defendant's guilt.

Was the court authorized to narrow the case, in its charge, to one of murder or manslaughter alone? There are certain facts connected with the difficulty about which there is no contradiction. That the

deceased Hickman had brought suit against Vinson, Turner, and others about some cattle; that Hickman and Cannon were brothers-in-law; that Vinson and Turner were long time friends; that Vinson was a much smaller man than Hickman; that Vinson was drinking; that Hickman began the altercation; that he knocked Vinson down and jumped on him; that Cannon cried out, "Let them fight;" that Cannon came up to where Hickman and Vinson were struggling; that there was a fresh gash on Vinson's face. Thus far every line of the testimony agrees. If there were no more than these uncontroverted facts, what would be the legal rights of the participants? To analyze the case more clearly, the question should be, what were the rights of Vinson, the man who had been halted and knocked down? For it must be always borne in mind that Turner's right to defend the person of Vinson was at least as high and complete as the right of Vinson himself. Reyons v. The State, 32 Texas Crim. Rep., 151; Bonner v. The State, 29 Texas Crim. App., 230.

If, therefore, Vinson himself had fired the fatal shot—if he, when forcibly stopped on the highway, assailed by a man of superior size, too drunk to properly defend himself, dazed and bloody with a blow which felled him to the ground, helpless by the grasp at his collar, prostrate under the knee of his enemy, should at that moment notice a kinsman of his assailant coming up with the exclamation, "Let them fight," and while thus beset should slay his assailant, would it be said that his guilt was so clear and deep that the jury should not even consider the question of justification?

Grant to the State that it was no more than a fist fight—and even then we claim that the fist of a strong man, if used in attack upon a physical inferior, may be both "unlawful and violent," and the weaker man is not limited to the puny and ineffective resistance which his unaided strength affords—our statute recognizes that the right of self-defense may spring from an attack of less gravity than one which produces a fear of death or serious bodily injury. (Penal Code, art. 572.) In the case of a robust man who kicks and beats a man of smaller size, this court has applied that statute by going even far enough to set aside a conviction of manslaughter, with the mildest penalty. Garello v. The State, 31 Texas Crim. Rep., 56.

Surely, then, it should have been left to the jury to determine whether Hickman was the aggressor in this case, and whether Turner could have prevented the injury by resorting to other means short of killing him. The right of killing in self-defense may exist in the case of a fist fight as well as in case of attacks more plainly threatening death, and depends upon the size and strength of the parties, coupled with other surroundings. Among the many cases in which this doctrine is enforced, there is a late interesting one, which we will file with this argument—People v. Harris, 54 N. W. Rep., 648 (Michigan).

But we can not admit that the difficulty out of which the killing of Hickman resulted was properly characterized by the district judge when, in the explanation of the refusal of the special charge, he describes it as a fisticuff. It was more than a fisticuff; it was more than a brutal battery of one man by his physical superior. Where does the court find warrant to exclude from the jury the defensive theories which might be predicated upon Cannon's action in advancing to the parties with his knife drawn? Put yourself in Vinson's place for a second time. He has been denounced, halted, bantered, and knocked down. A stronger man jumps on him, holds him by the collar, pins him to the ground with his knees, and prepares to beat him still more severely. Just at this crisis, drunk, helpless, and recovering from unconsciousness, he sees the brother-in-law of his adversary advancing to them with a drawn knife. He knows he does not come as a peace officer, because he is the only bystander to cry out, "Let them fight." Would not any reasonable man suppose that he was about to be visited with still more serious injury than that which his enemy could otherwise inflict? He might in the first place well conclude that a combination of enemies was about to take extreme vengeance upon him, and he might certainly conclude that the brutality of the man who had already knocked him down would be left to do its worst. In either event he would be warranted in protecting himself with a pistol, if no other practical means could be availed of. It is a familiar principle, that where there are more assailants than one the slayer has the right to act upon the hostile demonstrations of either, and to kill either of them if it reasonably appeared that they were acting together to take his life or to do him serious bodily injury. Meuly's case, 26 Texas Crim. App., 274; Jones' case, 20 Texas Crim. App., 671; Cartwright's case, 16 Texas Crim. App., 486; McLaughlin's case, 10 Texas Crim. App., 340.

But there is, in our opinion, still another fundamental weakness in the charge of the court. It submitted the question of manslaughter after a fashion, but it was a fashion which must have been grievously prejudicial to defendant. In the main charge manslaughter is treated only in formal definitions. There is no more application to the facts of Turner's case than to any other homicide case that ever happened in Texas. This court has condemned the practice and reversed cases where manslaughter was charged upon in this mode. Low's case, 20 So. W. Rep., 366.

It is true that there is an attempted application of the law of manslaughter to the facts by a special charge asked by defendant and given by the court, but this special charge only touches one phase of the question of manslaughter. And we urge upon this court that the great central question in a defendant's case should not be minimized in value

and sidetracked in consideration by giving it the uncertain footing of a special charge only.

This special charge touches only the general proposition, that if defendant was present and a fight arose, and the fight itself, the character of the crowd, and the surrounding circumstances were sufficient to create and did create such a degree of anger, rage, sudden resentment, or terror as to render the mind of defendant incapable of cool reflection, and "you so find the facts to have been beyond a reasonable doubt," defendant would be guilty of manslaughter.

But the court should, without any special request, have submitted the issue of manslaughter upon other distinct phases of the testimony.

1. There was an assault and battery by deceased Hickman on Vinson, which caused pain and bloodshed, and this would have reduced Turner's criminality to manslaughter.

2. There was a serious personal conflict, in which great injury was inflicted by Hickman on Vinson, by means of great superiority of strength. Lawrence's case, 10 Texas Crim. App., 495.

The above are specifically mentioned in our statute as adequate causes which may reduce a felonious homicide to manslaughter; but it is also a familiar doctrine of the common law that a sudden killing in resistance of an attack with the fists may be manslaughter. 1 Whart. Crim. Law, sec. 484.

The Texas Code of Criminal Procedure carefully provides, "that the same rules which regulate the conduct of a person about to be injured in repelling the aggression are also applicable to the conduct of him who interferes in behalf of such person." Art. 86.

But not only are these two theories of manslaughter justly predicated upon Hickman's conduct, but the acts of Cannon in advancing to the place of combat with a drawn knife can not be wholly excluded from consideration in deciding upon the question of manslaughter. Standing alone, it might be said that it was a provocation given by some person other than the party killed; but it is entitled to be considered in combination with the acts of Hickman, and must have greatly intensified the rage and terror of Turner when he came upon the scene and saw, as he believed, that his friend, fastened to the earth by Hickman, was about to become the victim of still further injuries from the combined efforts of both Hickman and Cannon.

DAVIDSON, Judge.—1. The court did not err in refusing to submit the issue of self-defense to the jury. It was not raised by the evidence. Deceased and one Vinson were engaged in ordinary fist fight at the time defendant came up and fired the fatal shot.

2. State's witness Cannon was recalled by defendant, and asked if he "did not state on the examining trial of this defendant in the town of Leggett, in Polk County, Texas, about two days after N. R. Hickman

was killed, that you had been in Leggett, and away from the gin, your place of business, about one hour and twenty minutes, when Hickman was killed?" This was intended as a predicate for impeaching the witness. This witness had previously testified that he was in Leggett a shorter time than one hour and twenty minutes. A witness may be recalled by the opposing side for the purpose of laying a predicate for his impeachment; but in such case it will not be error to exclude both the question and answer, or reject either or both, if they be collateral or immaterial. Drake v. The State, 29 Texas Crim. App., 265. How the fact that the witness was in Leggett a longer or shorter period of time could have been material is not discernible from the record before us.

3. Vinson, while testifying for defendant, was asked to "state whether or not the defendant knew of the threats made against you by the deceased." He was expected to "answer in the affirmative, and that defendant did know of threats made by deceased against the witness." The bill of exceptions is too uncertain and vague in its statements to require consideration. The nature and character of the threats are not stated. It is not even shown that any threats were made by deceased against Vinson. The rejected evidence must be shown to be in some manner material to some issue in the case. Willson's Crim. Proc., secs. 2368, 2516.

4. The petition for writ of injunction filed by deceased against defendant Vinson and others in regard to the cattle set out therein, the order of the judge granting said writ, and the writ itself, were properly admitted. It was relevant testimony, and bore directly upon the status of the parties to the unfortunate homicide in regard to their animus and ill will towards each other.

5. The defendant offered to prove that Tom Hickman had a pistol "on the ground" when the difficulty occurred, "at the time of the difficulty, and while Tom Hickman was cursing Nick Vinson and defendant." The court informed counsel that they could prove that said "Hickman was on the ground at the time of the difficulty, and that he had a pistol, but they would not be allowed to show that he was armed with a pistol after the difficulty was over (when he was cursing defendant and Vinson), which was after the killing. The defense did prove, however, by Ross Edwards, that Tom Hickman had a pistol on the ground after the killing of Dick Hickman."

As presented, the bill of exceptions does not show error. The fact that Tom Hickman had a pistol after the killing was not a fact tending to excuse or justify defendant in shooting Dick Hickman.

If defendant failed to prove that Tom Hickman had the pistol before or at the time of the killing, it was either because it was not a fact, or because if true he declined to prove it. The court informed him that such testimony would be admitted. It is, to say the least of it, very

doubtful if such evidence could have been, under the facts of this case, in any way material, if true.

Defendant did not shoot or attempt to shoot at Tom Hickman, but shot Dick Hickman, who was unarmed, and who was not displaying a pistol. He says he shot deceased because Cannon was approaching the place of the difficulty with a knife in his hand.

The evidence amply supports the judgment, and it is affirmed.

*Affirmed.*

Judges all present and concurring.